Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br><br>ACCREDITED DEBT RELIEF, LLC<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff" and/or "Plaintiffs"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendant demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant ACCREDITED DEBT RELIEF, LLC is, and at all times herein mentioned was, a California Corporation, headquartered in the State of California, doing business in the County of Orange, State of California (hereinafter referred to as "Defendant" and/or "ACCREDITED").

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court decided that federal courts have federal question subject matter jurisdiction over such TCPA civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 387, 132 S.Ct. 740, 753 (2012).

4. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from September 8, 2019 to the present, including up to and through trial.*

6. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. ACCREDITED is engaged in a scheme to sell debt refinance services via cold calls to residential phone numbers on the protected federal Do Not Call Registry.

8. Thus, ACCREDITED is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. The modus operandi is the same for all the calls in this case, ACCREDITED either directly or using an agent acting at the direction of ACCREDITED calls various numbers in the United States to sell ACCREDITED's services without regard to whether those numbers are on the Do Not Call Registry or not.

10. ACCREDITED and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

11. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

12. ACCREDITED has intentionally violated the TCPA in a so-far successful attempt to sell debt refinancing services for years.

**FACTUAL DETAILS RE NAMED PLAINTIFF**

13. Defendants made Fifteen (15) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their debt refinance services on the following dates and times and using the following Caller ID ("CID") numbers:

Case 8:23-cv-01652-DOC-JDE   Document 1   Filed 09/06/23   Page 4 of 16   Page ID #:4

- 09/09/2019, 12:57 pm, CID 714-820-9947. Missed call.
- 09/13/2019, 11:40 pm, CID 714-820-9947. Missed call.
- 10/15/2019, 11:57 am, CID 714-820-9947. Missed call.
- 11/11/2019, 2:24 pm, CID 714-820-9947. Answered call.
- 11/13/2019, 1:42 pm, CID 714-820-9947, Answered call
- 11/19/2019, 2:55 pm, CID 714-820-9947. Missed call
- 12/02/2019, 8:53 am, CID 714-820-9947. Missed call
- 12/16/2019, 1:01 pm, CID 714-820-9947. Missed call
- 01/13/2020, 3:25 pm, CID 209-947-7927. Answered call
- 01/13/2020, 3:30 pm, CID 310-953-3073. Voice message
- 01/13/2020, 3:40 pm, CID 310-953-3073. Missed call
- 01/22/2020, 10:26 am, CID 714-820-9947. Answered call
- 01/22/2020, 10:38 am, CID 310-953-3073. Missed call
- 01/22/2020, 4:58 pm, CID 310-953-3073. Missed call
- 02/04/2020, 6:51pm, CID 310-953-3073.  Missed call

14. Mr. Sapan made a log of all the calls he received from ACCREDITED during or shortly after receiving the calls which includes the date and time of the call as well as brief notes about what happened during the calls.

15. This call log is attached to this Complaint as Exhibit 1, and is incorporated herewith.

16. The all calls illegally blocked transmitting Caller ID Name information.  *See*, 47 U.S.C. § 227(e) (Truth in Caller ID Act of 2009).

17. Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company more than ten (10) years ago.

18. Mr. Sapan registered his residential line on the National "Do-Not-Call" Registry on December 22, 2007 and Mr. Sapan has kept his residential line on the Registry from that time to the present.

19. Mr. Sapan never gave any ACCREDITED or any other person, agent, employee or entity associated with ACCREDITED express written permission to call him, nor does he have an established business relationship nor personal relationship with ACCREDITED or any other person, agent, employee or entity associated with ACCREDITED.

- 4 -
Complaint

20. The first set of eight (8) calls beginning on September 9, 2023 all come from the CID 714-820-9947.

21. On the fourth call from C CID 714-820-9947, Mr. Sapan spoke with a person representing they were from a "Mike" who was asking about unsecured debt but the call then dropped.

22. On the fifth call from C CID 714-820-9947, Mr. Sapan spoke with a person representing they were from a "David" who was asking about unsecured debt but the call then dropped.

23. On the January 13, 2020 call from CID 209-947-7927 Mr. Sapan answered the call and spoke with a "Kevin" who discussed debt relieve and then transferred Mr. Sapan to a "Edgar" who said he was with "Accredited Debt Relief in La Jolla", but the call then dropped.

24. On January 22, 2020 Mr. Sapan answered a call from CID 714-820-9947 and Mr. Sapan spoke to the same "Kevin" that he spoke with on January 13, 2023 who again pitched debt relief services but the call dropped.

25. On January 13, 2020, Mr. Sapan received a call from CID 310-953-3073 which he did not answer but "Edgar" with ACCREDITED leaving a voice message stating CID 310-953-3073 was "Edgar's" direct phone number.

26. Mr. Sapan also received four more calls from CID 310-953-3073 on January 13, 2020 through February 4, 2020 but did not answer as he knew it was from ACCREDITED.

27. Plaintiff pleads on information and belief that the CID numbers, 714-820-9947, 209-947-7927 and 310-953-3073 all belong directly to ACCREDITED and that ACCREDITED directly made the calls associated with these CID.

28. Plaintiff pleads on information and belief that the CID numbers, 714-820-9947, 209-947-7927 and 310-953-3073 all belong directly to an agent or entity hired by ACCREDITED and that those entities or persons directly made the calls associated with these CID.

29. The call from "Edgar" had the CID 209-947-7927, so Plaintiff pleads on information and belief that the CID 209-947-7927belonged directly to ACCREDITED and that ACCREDITED directly made the calls associated with this CID.

30. "Edgar" also confirmed that CID 310-953-3073 was his direct number so Plaintiff pleads on information and belief that the CID 310-953-3073 belonged directly to ACCREDITED and that ACCREDITED directly made the calls associated with this CID.

31. Plaintiff alleges on information and belief that the calls from CID 310-953-3073 were calls from the agent or entity hired by ACCREDITED.

32. Plaintiff alleges on information and belief that the calls from CID 310-953-3073 were calls made by a person or entity on behalf of ACCREDITED to sell ACCREDITED's services.

33. Each time Mr. Sapan answered ACCREDITED tried to sell debt refinance services.

34. Mr. Sapan never agreed to any callbacks nor did he express interest in the debt refinance services.

35. Plaintiff alleges on information and belief that ACCREDITED transmitted the latter calls he did not answer to Mr. Sapan's residential line which was on the federal "Do Not Call" Registry to sell their debt refinance services just like they did in the previous calls.

36. All of the calls were made either by ACCREDITED directly or "on behalf of" ACCREDITED within the meaning of 47 U.S.C. 227(c)(5) because the point of all the calls was to sell ACCREDITED's debt refinance services.

37. Plaintiff pleads on information and belief that to the extent ACCREDITED may have relied on any agent or other entity to begin telemarketing calls on its behalf, ACCREDITED had direct knowledge that such

Complaint

calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

38. Alternatively, Plaintiff pleads on information and belief that to the extent ACCREDITED may have relied on any agent or other entity to begin telemarketing calls on its behalf, ACCREDITED hired that agent to interact with the public on ACCREDITED' behalf using ACCREDITED' name when they brought the ACCREDITED sales person into the illegal call and therefore gave implied authority to represent ACCREDITED.

39. Alternatively, Plaintiff pleads on information and belief that ACCREDITED ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct.

40. ACCREDITED may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## **DIRECT LIABILITY OF ACCREDITED**

41. As detailed above, Plaintiffs pleads that CID numbers, CID numbers, 714-820-9947, 209-947-7927 and 310-953-3073 all belong directly to ACCREDITED and that ACCREDITED directly made the calls associated with these CIDs.

42. Plaintiff pleads on information and belief that all calls made from CID numbers, 714-820-9947, 209-947-7927 and 310-953-3073 were made by direct employees of ACCREDITED.

43. Plaintiff was also called directly from "Edgar" who Plaintiff believes is a direct employee of ACCREDITED, and who called from CID numbers, 714-

820-9947, 209-947-7927 and 310-953-3073, which shows that all calls from CID 818-444-6499 are from a direct employee of ACCREDITED.

44. Plaintiff pleads on information and belief that "Mike" and "Kevin" and "David" who was on the calls were direct employees of ACCREDITED.

45. Plaintiff pleads on information and belief that the officers, managers and employees for ACCREDITED knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made because the calling was cold call junk telemarketing not directed to any specific person and used a technically sophisticated calling system that could illegally hide Caller ID Name which indicates that this was an intentional and organized corporate sales effort and not a rogue employee or random event.

## AGENT LIABILITY ALLEGATIONS

46. Plaintiff pleads on information and belief that to the extent ACCREDITED may have relied on any agent or other entity to make telemarketing calls on its behalf, ACCREDITED had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or authorized such actions by, inter alia, allowing the agent to bring direct ACCREDITED representatives into the call to attempt to complete the sale.

47. Alternatively, Plaintiff pleads on information and belief that to the extent ACCREDITED may have relied on any agent or other entity to make telemarketing calls on its behalf, ACCREDITED hired that agent to interact with the public on ACCREDITED' behalf and therefore gave implied authority to represent ACCREDITED.

48. Alternatively, Plaintiff pleads on information and belief that ACCREDITED ratified the making telemarketing calls on its behalf if made by

third-party agents by knowing of the illegal conduct and failing to repudiate the conduct for all the reasons given above.

49. Plaintiff pleads on information and belief that to the extent ACCREDITED uses any agents to make calls, ACCREDITED has ordered their agent to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

50. Plaintiff pleads on information and belief that to the extent ACCREDITED uses any agents to make calls, ACCREDITED knew or reasonably should have known that its agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

51. Plaintiff pleads on information and belief that to the extent ACCREDITED uses any agents to make calls, ACCREDITED explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit by condoning their actions afterwards.

52. Plaintiff pleads on information and belief that to the extent ACCREDITED uses any agents to make calls, ACCREDITED explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of ACCREDITED.

53. Plaintiff pleads on information and belief that Mike" and "Kevin" and "David" and "Edgar" who were on the calls are all agents of ACCREDITED hired by ACCREDITED to conduct telemarketing on ACCREDITED's behalf, and that these persons engaged in all conducted alleged to have been conducted by agents of ACCREDITED.

## "ON BEHALF OF" LIABILITY ALLEGATIONS

54. Plaintiff pleads that all calls complained of above were made "on behalf of" ACCREDITED within the meaning of those words as used in title 47 of

the United States Code section 227(c)(5):  "A person who has received more than one telephone call within any 12-month period **by or on behalf of** the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State…" [emphasis added].

55. Plaintiff contends that "on behalf of" liability is a broader standard than traditional agency liability.

56. Plaintiff pleads on information and belief that ACCREDITED hired, retained, instructed or allowed any entity or person who made the alleged calls to makes those calls on behalf of ACCREDITED in order to sell ACCREDITED's financial products.

57. Additionally, any call which was transferred to an employee of ACCREDITED was made on behalf of ACCREDITED to sell their services.

58. Plaintiff pleads on information and belief Mike" and "Kevin" and "David" and "Edgar" who were on the calls are all agents of ACCREDITED hired by ACCREDITED to conduct telemarketing on ACCREDITED's behalf, and that these persons engaged in all conducted alleged to have been conducted by agents of ACCREDITED.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

59. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

60. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

61. Plaintiff has been harmed by these calls by the intrusion upon his privacy by callers who had no legal right to call his residential number.

62. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

63. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

64. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

65. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

66. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

67. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

# CLASS ACTION ALLEGATIONS

68. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from September 9, 2019 to the present, including up to and through trial.*

69. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

70. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

71. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members

are geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant's call records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

72. **Common Questions of Law and Fact Predominate**:  There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c. Whether the transmission of these calls was done willfully or knowingly by Defendant.

d. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

73. **Typicality**:  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

74. **Adequacy of Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel.  Plaintiff and class counsel are committed to vigorously prosecuting

this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

75. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

76. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION: TCPA VIOLATION**
**CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY**
**(On Behalf of the Plaintiff Class)**

77. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

78. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

79. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

80. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

81. Defendant has called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

82. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation,

or both.  If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;
3. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

4. For attorney's fees pursuant to all applicable federal and state statutes;
5. For costs of suit herein incurred; and
6. For such further relief as the Court deems proper.

DATED: September 6, 2023   **PRATO & REICHMAN, APC**

/s/Justin Prato, Esq.
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,